UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNETTA RILEY<br><br>Plaintiff,<br><br>v.<br><br>BMO HARRIS BANK, N.A., *et al*,<br><br>Defendants. | Civil Action No. 13-1677 (CKK) |

MEMORANDUM OPINION
(July 29, 2014)

Plaintiff, Johnetta Riley, filed suit against BMO Harris Bank, N.A., First Premier Bank, and Missouri Bank and Trust (collectively, "Defendants") seeking to recover damages and declaratory and injunctive relief on behalf of herself and members of the class of individuals who have been injured by Defendants' "participation in a scheme to access and utilize the Automated Clearing House ("ACH") network to collect unlawful debts in violation of 18 U.S.C. § 1962 and the law of numerous states, including the District of Columbia." Compl. ¶ 1. Specifically, Plaintiff alleges each Defendant debited her and class members' bank accounts via an ACH entry on behalf of an Illegal Online Payday Lender in repayment of a loan which was illegal under District of Columbia law. *Id*. ¶¶ 9-12. Presently before the Court are Defendants' Motions to Compel Arbitration. *See* ECF Nos. [26], [29], [33]. Upon consideration of the pleadings,[1] the

---

[1] Defendant Missouri Bank and Trust's Motion to Compel Arbitration ("MBT's Mot."), ECF No. [26]; Defendant First Premier Bank's Motion to Compel Arbitration ("FPB's Mot."), ECF No. [29]; Defendant BMO Harris Bank, N.A.'s Motion to Compel Arbitration ("BMO's Mot."), ECF No. [33]; Plaintiff's Opposition to Defendant Missouri Bank and Trust's Motion to Compel Arbitration (Pl.'s MBT Opp'n."), ECF No. [48]; Plaintiff's Opposition to Defendant First Premier Bank's Motion to Compel Arbitration ("Pl.'s FPB Opp'n"), ECF No. [42]; Plaintiff's Opposition to Defendant BMO Harris Bank, N.A.'s Motion to Compel Arbitration

1

relevant legal authorities, and the record as a whole, the Court finds that Defendants may enforce the arbitration provisions against Plaintiff. Accordingly, Defendants' Motions to Compel Arbitration are GRANTED and this case is DISMISSED.

## I. BACKGROUND

*A. Factual Background*

For the purposes of Defendants' Motion to Compel Arbitration, the Court presumes the following facts pled in Plaintiff's Complaint to be true. *RDP Technologies, Inc. v. Cambi AS*, 800 F.Supp.2d 127, 133 (D.D.C. 2011) ("the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor"). The genesis of this case is four online payday loans that Plaintiff applied for and received: one for $300 on or about September 27, 2012, one for $1200 on or about January 29, 2013, one for $700 on or about April 30, 2013, and one for $400 on or about May 24, 2013. Compl. ¶¶ 77, 81, 86, 90. The interest rate on the loans was 25 to 30%, with annual nominal interest rates between 536.76% and 782.14%. *Id.* ¶¶ 78-79; 82-83, 87-88. Each loan was made pursuant to a loan agreement which contained an authorization for the lender to initiate electronic funds transfers performed using the Automated Clearing House ("ACH") network, "a processing system in which financial institutions accumulate ACH transactions throughout the day for later batch processing." *Id.* ¶

---

("Pl.'s BMO Opp'n."), ECF No. [44]; Defendant Missouri Bank and Trust's Reply ("MBT Reply"), ECF No. [52]; Defendant BMO Harris Bank, N.A.'s Reply ("BMO Reply"), ECF No. [56]; Defendant BMO Harris Bank Notice of Supplemental Authority, ECF No. [58]; Plaintiff's Response to Supplemental Authority, ECF No. [59]; Plaintiff's Notice of Supplemental Authority, ECF No. [60]; Defendant BMO Harris Bank Notice of Supplemental Authority, ECF No. [61]; Plaintiff's Notice of Supplemental Authority, ECF No. [62]; Defendant BMO Harris Bank Response to Supplemental Authority, ECF No. [63]; Defendant BMO Harris Bank Notice of Supplemental Authority, ECF No. [64]; Plaintiff's Response to Supplemental Authority, ECF No. [65]; Defendant BMO Harris Bank Notice of Supplemental Authority, ECF No. [68]; Defendant BMO Harris Bank Notice of Supplemental Authority, ECF No. [69]; Plaintiff's Response to Supplemental Authority, ECF No. [70].

34. The ACH transactions are the credits and debits of funds from a financial account necessary for an exchange between two parties. *Id.* ¶¶ 35-36. Entities called Originating Depository Financial Institutions ("ODFIs"), which are banks who are members of the ACH Network, transmit the debited or credited funds between the parties' bank accounts. *Id.* ¶ 39. Defendants BMO Harris Bank, N.A., First Premier Bank, and Missouri Bank and Trust are the ODFIs that originated the four loan transactions in this case. *Id.* ¶¶ 85, 94, 95. Defendants received fees for their origination of debit entries on the ACH Network initiated by the lenders and withdrawn from Plaintiff. *Id.* ¶ 96. The lenders are not parties in this case.

The loan agreements Plaintiff signed with the lenders also contained arbitration provisions. Although Plaintiff did not attach the loan agreements to her Complaint, they are referenced throughout the Complaint. Moreover, Defendants attached the loan agreements as exhibits to their motions to compel arbitration and Plaintiff cites to these exhibits throughout her Opposition to Defendants' motions. *See* MBT's Mot., Ex. A (Loan Agreement), ECF No. [26-2]; FPB's Mot., Ex. A ("Loan Agreement"), ECF No. [29-4]; BMO's Mot., Ex A (Loan Agreement), ECF No. [33-2]. Accordingly, it is proper for the Court to consider these agreements in evaluating these motions. *See Ahuja v. Detica Inc.*, 742 F. Supp 2d 96, 102 (D.D.C. 2010). The loan agreements that Plaintiff signed with the lenders who used BMO Harris Bank and First Premier Bank to conduct the ACH transactions state that:

> We have a policy of arbitrating all disputes with customers; including the scope and validity of this Arbitration Provision, and to do so only with customers who are acting in their individual capacities, and not as representatives of a class.
>
> . . . the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation: **(a)** all claims, disputes or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; **(b)** all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Agreement, the

3

information you gave us before entering into the Agreement, including the customer information application, and/or any past agreement or agreements between you and us; **(c)** all counterclaims, cross-claims and third party claims; **(d)** all common law claims, based upon contract, tort, fraud, or other intentional torts; **(e)** all claims based upon a violation of any state or federal constitution, statute or regulation; . . . **(g)** all claims asserted by you individually against us *and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities ("related third parties")*, including claims for money damages and/or equitable or injunctive relief; . . . **(i)** all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties ("Representative Claims") . . .

BMO's Mot., Ex A (Loan Agreement), at 5; FPB's Mot., Ex. A (Loan Agreement), at 11 (emphasis added).

Similarly, the loan agreement that Plaintiff signed with the lender who used Missouri Bank and Trust to conduct the ACH transaction stated that:

> **ARBITRATION OF ALL DISPUTES**: You and we agree that *any and all claims, disputes or controversies between you and us, any claim by either of us against the other (or the employees, officers, directors, agents, servicers or assigns of the other)* and any claim arising or relating to your application for this micro-business loan ("Loan"), regarding this Loan or any other Loan you previously or may later obtain from us, this Note, this agreement to arbitrate all disputes, your agreement not to bring, join or participate in class actions, regarding collection of the Loan, alleging fraud or misrepresentation, whether under common law or pursuant to federal, state or local statute, regulation or ordinance, including disputes regarding the matters subject to arbitration, or otherwise, shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed. No class arbitration. All disputes including any Representative Claims against us *and/or related third parties* shall be resolved by binding arbitration only on an individual basis with you. . . .

MBT's Mot., Ex. A, at 2 (emphasis added).

### B. *Procedural Background*

Plaintiff filed suit on October 28, 2013, alleging that by collecting these "unlawful debts," Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and conspired with the lender to violate RICO. *Id*. ¶¶ 1, 119, 143, 160.

Plaintiff also alleges state law claims against Defendant, including claims for assumpsit and aiding and abetting violations of the District of Columbia's payday lending and usury laws. *Id*. ¶¶ 163-167, 171-176. In response, Defendant BMO Harris Bank filed four motions: a Motion to Sever Pursuant to Fed. R. Civ. P. 21, *see* ECF No. [31], a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), *see* ECF No. [32], a Motion to Compel Arbitration, *see* ECF No. [33], and a Motion to Dismiss, *see* ECF No. [34]. Defendants Missouri Bank and Trust and First Premier Bank each filed a Motion to Compel Arbitration, *see* ECF Nos. [26], [29], and a Motion to Dismiss, *see* ECF Nos. [25], [28].

As the Court finds that all claims brought by Plaintiff must be arbitrated pursuant to the loan agreements Plaintiff signed, the Court grants Defendants' Motions to Compel Arbitration and dismisses this action. Accordingly, the Court does not reach the parties' other motions.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under District of Columbia law, "arbitration is predicated upon the consent of the parties to a dispute, and the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of contracts between the parties." *Bailey v. Fed. Nat'l Mortg. Ass'n,* 209 F.3d 740, 746 (D.C. Cir. 2000) (citation omitted). "[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in

favor of coverage." *Air Line Pilots Ass'n v. Fed. Express Corp.,* 402 F.3d 1245, 1248 (D.C. Cir. 2005) (citation omitted).

### III. DISCUSSION

Defendants move the Court to compel arbitration of Plaintiff's claims on the basis that the loan agreements that Plaintiff signed with the lenders contained broad provisions requiring Plaintiff to arbitrate all claims "arising from and relating to" the loan agreement against the lender and certain third parties. Defendants contend that all of Plaintiff's claims in this case relate to the loan agreement and thus, pursuant to the plain terms of the agreement and principles of equitable estoppel, Plaintiff must submit these claims to arbitration. Plaintiff responds that this Court should not enforce the loan agreements' arbitration provisions against Plaintiff because the Defendant banks were not signatories to the loan agreement, nor were they third-party beneficiaries or agents. Plaintiff further contends that she is not equitably estopped from avoiding the arbitration agreement. Finally, Plaintiff argues that her claims should not be subject to the arbitration agreement because the underlying loan agreements are illegal and because Defendants have "unclean hands".

*A. Arbitration Agreements Enforceable Pursuant to Doctrine of Equitable Estoppel*

The parties do not dispute the authenticity of the loan agreements, nor do they dispute that Plaintiff signed agreements containing a clear provision requiring arbitration of claims against the lender and certain third parties arising from the loan agreement. What the parties do dispute is whether the Defendant banks who did not contract with Plaintiff and who are not explicitly referenced in the loan agreements can enforce the arbitration agreements against

6

Plaintiff.[2] Courts in the District of Columbia Circuit[3] have held that non-signatories to an arbitration agreement, such as Defendants, may compel a signatory to the agreement to arbitrate a dispute pursuant to the doctrine of estoppel.[4] Under the doctrine of estoppel, a non-signatory

---

[2] Defendants First Premier Bank and Missouri Bank and Trust argue that the question of arbitrability of this dispute is itself a question for the arbitrator, not the Court, to decide per the language of the loan agreements. FPB's Mot. at 7-8; MBT's Mot. at 2. Defendants point to language in the underlying loan agreements which states that questions about "the scope of the arbitration agreement" and "matters subject to arbitration" are to be decided by the arbitrator. FPB's Mot. at 8; MBT's Mot. at 10. In general, courts do not presume that parties agreed to arbitrate arbitrability and will find that they did only if there is "clear and unmistakable evidence" of such an agreement. *See First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986)); *see also Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002). To determine whether "clear and unmistakable evidence" exists, courts apply principles of ordinary state-law contract formation. *First Options,* 514 U.S. at 944. Although the language of the arbitration provisions clearly requires threshold questions about the arbitrability of certain disputes be submitted to the arbitrator, when evaluating whether the parties clearly and unmistakably agreed to submit the threshold question of arbitrability to the arbitrator in a case involving a non-signatory to the arbitration agreement courts still look to the "intertwined" test discussed below "to determine if the parties' relationship was close enough to justify compelling arbitration, even as to the question of arbitrability." *Moss et al. v. BMO Harris Bank N.A., et al.*, --- F. Supp.2d ---, 2014 WL 2565824, at *3 fn. 5 (E.D.N.Y. June 9, 2014) (citing *Contec Corp. v. Remote Solution Co., Ltd.* 398 F.3d 205, 209 (2d Cir. 2005) ("In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement. . . . A useful benchmark for relational sufficiency can be found in our estoppel decision in *Choctaw* . . . where we held that the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." (internal quotation marks and citations omitted))). Accordingly, the Court must still determine whether Plaintiff is estopped from avoiding arbitration, even if the question of arbitrability must be submitted to the arbitrator per the language of the loan agreements.

[3] The Court of Appeals for the District of Columbia Circuit has yet to decide whether a party to an arbitration agreement can be compelled to arbitrate with a non-signatory on the basis of equitable estoppel. *See Toledano v. O'Connor*, 501 F.Supp.2d 127, 153 (D.D.C. 2007). However, the fact that the D.C. Circuit has yet to decide this issue does not preclude the Court from employing this approach, especially when several district court judges in the District of Columbia Circuit have applied equitable estoppel principles to enforce an arbitration agreement against a non-signatory.

[4] Plaintiff contends that a "non-signatory to an arbitration agreement can only compel parties to arbitrate under the FAA when 'the relevant state contract law allows him to enforce the

can compel arbitration with a signatory "when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed." *Fox v. Computer World Servs. Corp.*, 920 F.Supp.2d 90, 103 (D.D.C. 2013); *see also Khan v. Parsons Global Servs., Ltd.*, 480 F.Supp.2d 327, 341–42 (D.D.C. 2007), *rev'd on other grounds,* 521 F.3d 421 (D.C. Cir. 2008); *accord, e.g., Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010); *Ross v. AM. Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008) ("Our cases have recognized that under

---

agreement." Pl.'s BMO Opp'n. at 10; Pl.'s FPB Opp'n. at 9; Pl.'s MBT Opp'n. at 14. In support of her argument, Plaintiff cites to *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009), which held that state contract law provides the "traditional principles . . . [that] allow a contract to be enforced by or against nonparties to the contract through . . . estoppel." *Id*. Plaintiff argues that Defendants BMO Harris Bank and First Premier Bank cannot contend that the doctrine of equitable estoppel requires arbitration of Plaintiff's claims because neither Defendant has established whether equitable estoppel is available under the law governing the loan agreements related to those Defendants—i.e. the laws of the nation of Belize. Pl.'s BMO Opp'n. at 11; Pl.'s FPB Opp'n. at 10. As for Defendant Missouri Bank and Trust, Plaintiff argues that Defendant entirely "neglects to inform the Court what law purportedly governs" the loan agreement and thus "fail[s] to meet its burden under *Arthur Anderson*." Pl.'s MBT Opp'n. at 15. Even though Plaintiff appears to be arguing that the laws of Belize or the law governing the loan agreement related to MBT should control the Court's analysis of the arbitration provisions, Plaintiff fails to show that these laws conflict in any way with the laws of the District of Columbia on the question of estoppel. In fact, "Plaintiff takes no position on the applicability of [these] law[s] other than to note that [Defendants] ha[ve] not even attempted . . . to show the law[s] governing the Loan Agreement[s] permit[] it to invoke equitable estoppel." Pl.'s BMO Opp'n. at 11; Pl.'s FPB Opp'n. at 10; Pl.'s MBT Opp'n. at 15. But the choice-of-law question is relevant only to the extent that the foreign law conflicts with the law of the forum. *See Greaves v. State Farm Ins. Co.*, 984 F. Supp. 12, 15 (D.D.C. 1997), *aff'd* 172 F.3d 919 (D.C. Cir. 1998) ("The absence of a true conflict compels the application of District of Columbia law by default."). Moreover, all of Plaintiff's claims and her arguments in Opposition to Defendants' motions assume that District of Columbia law will apply to the loan agreements. Defendants accede to Plaintiff's election of District of Columbia law for purposes of this motion. *See* MBT's Reply at 7; BMO's Reply at 5 n. 4; FPB's Mot. at 9 n. 2. Thus, even though Plaintiff appears to be raising a conflict of law issue, the parties agree about the law to be applied in evaluating this motion and the Court shall respect that agreement. *See*, *e.g.*, *Doe v. De Amigos, LLC*, 987 F.Supp.2d 12, 15-16 (D.D.C. 2013) (explaining that "courts need not address choice of law questions *sua sponte*" and "apply[ing] District of Columbia substantive law since both parties agree that District of Columbia substantive law governs"); *accord Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995) (where the parties "assumed that California law govern[ed]" the relevant contract, both district court and court of appeals "proceed[ed] on the same assumption").

principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.") (internal quotation marks and citation omitted)); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000).

For example, courts have held that where there would be no claim against the nonsignatory if the underlying contract never existed, estoppel is appropriate. *See Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). Here, each of Plaintiff's claims against Defendants relies on the allegation that Plaintiff's loan agreements were invalid under District of Columbia usury law. Plaintiff's RICO and RICO conspiracy counts rest on her allegations that Defendants facilitated loans which are "unlawful debts" "unenforceable . . . because of the laws relating to usury" and "incurred in connection with the business of lending money at a rate usurious under State or Federal law." Compl. ¶¶ 111, 117, 135, 141, 152, 158. Her claim for assumpsit and her claim that the banks allegedly aided and abetted her lenders in committing violations of the District of Columbia's usury law likewise depend on her assertion that the loans for which the banks processed payments bore interest in excess of the lawful rate. *Id.* ¶¶ 178, 181. And her claim that the banks allegedly aided and abetted her lenders in committing violations of the District of Columbia's payday lending law relies on her allegation that the loans for which the banks processed payments were, by virtue of their terms, "payday loans in violation of D.C. law." *Id.* ¶ 170. The Court finds that Plaintiff's factual allegations indicate that her claims arise from and are thus intertwined with the loan agreements containing the arbitration provision. *See Grigson*, 210 F.3d at 527 ("equitable estoppel applies when the

signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.") (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

Plaintiff contends that her claims are not "intertwined" with the loan agreements because she has not alleged that the banks violated the terms of the loan agreement or that the banks had duties or obligations under the loan agreements; in other words, Plaintiff contends, her claims are "wholly separate" from any action or remedy for breach of the underlying loan agreements. Pl.'s BMO Opp'n. at 14; Pl.'s FPB Opp'n. at 13; Pl.'s MBT Opp'n at 18. However, for a court to find Plaintiff's claims "intertwined" with the agreements containing the arbitration provision, Plaintiff need not claim that Defendants breached those agreements themselves; instead, the relevant question is whether the agreements need to be "relied upon" or are "integral" to establishing the violation alleged by Plaintiff. *See Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F.Supp.2d 295, 301 (S.D.N.Y. 2008), *aff'd* 328 Fed.Appx. 42 (2d Cir. 2009) ("The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel.") (emphasis in original)); *JLM Industries, Inc. v. Stold-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004) (finding question non-signatory sought to arbitrate was intertwined with the contract containing the arbitration provision because "it [was] the fact of [plaintiff's] entry into [contracts] containing allegedly inflated price terms that gives rise to the claimed injury."); *MS Dealer Serv. Corp.*, 177 F.3d at 948 ("Although Franklin does not allege that the service contract

has been violated or breached in any way, each of her fraud and conspiracy claims depends entirely upon her contractual obligation to pay $990.00 for the service contract."). Here, unlike the cases Plaintiff cites where a non-signatory unsuccessfully attempts to rely on the simple existence of a related agreement containing an arbitration provision, Plaintiff's claims rely on the specific terms of the underlying loan agreements. It is the illegality of the terms of the loan agreements, and Defendants' knowledge of it, that makes Defendants liable for conspiracy. Accordingly, the Court finds that the "non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed."[5]

In addition, the propriety of applying the equitable estoppel doctrine in this case is reinforced by the fact that there was "a relationship among the parties which either support[s] the conclusion that [the signatory] had consented to extend its agreement to [the non-signatory], or, otherwise put, made it inequitable for [the signatory] to refuse to arbitrate on the ground that it had made no agreement with [the non-signatory]." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008). All of the loan agreements include language clearly establishing

---

[5] The Court notes that Plaintiff's Counsel and Defendants are involved in substantially similar cases in other jurisdictions. Although not controlling, the Court finds recent rulings in these cases granting Defendants' motions to compel arbitration persuasive on the issues of estoppel and, specifically, whether Plaintiff's claims are intertwined with the loan agreements. In *Elder v. BMO Harris Bank, et al.,* Judge F. Motz of the District of Maryland held that Plaintiff was estopped from avoiding arbitration because "[c]learly, plaintiff must rely on the terms of the written agreement in which the arbitration clause is contained because it is that agreement that contains the allegedly usurious interest provision upon which this law suit is based." No. 13-3043, 2014 WL 1429334 at *1 (D. Md. Apr. 11, 2014). Likewise, in *Moss, et al. v. BMO Harris Bank, N.A., et al.*, Judge Joseph F. Bianco of the Eastern District of New York found that "the entire case depends on the contents of the loan agreements, and in particular whether their terms are unlawful." 2014 WL 2565824, at *5 (E.D.N.Y. June 9, 2014). Plaintiff points to *Dillon v. BMO Harris Bank, N.A., et al.*, No. 13-897, 2014 WL 911950, at *2 (M.D.N.C. Mar. 10, 2014) where the Middle District of North Carolina denied defendants' motions to compel. However, the district court denied defendants' motions on the basis that there was a dispute about the authenticity of the loan agreements produced by defendants. No such facts are present in the case before this Court and, as such, the Court finds *Dillon* has no bearing on the Court's evaluation of Defendants' motions to compel arbitration.

that Plaintiff agreed to arbitrate with the lenders, but also with the lenders' servicers, agents, and affiliated entities. *See* BMO's Mot., Ex. A, at 5 ("any of [the lender's] agents . . . or affiliated entities ("related third parties")"); FPB's Mot., Ex. A, at 11 (same); MBT's Mot., Ex. A, at 2 ("or the . . . agents, servicers . . . of the other"). The loan agreements also include authorizations by Plaintiff for the lenders to receive payments via electronic transfer. The authorization Plaintiff signed with the lender who employed Defendant Missouri Bank and Trust to affect the ACH debit entry specifically stated, "You authorize us, [the lender], or our *servicer, agent, or affiliate* to initiate one or more ACH debit entries . . . ." MBT's Mot., Ex. A, at 5 (emphasis added). As Plaintiff explicitly authorized the lender's "servicer" or "agent" to perform the ACH debit entries and those are the exact words contained in the arbitration provision, the Court concludes that it was foreseeable that Defendant Missouri Bank and Trust would be among the types of entities with whom Plaintiff would be obligated to arbitrate any dispute. "Having agreed to arbitrate with undefined agents and servicers, and likewise having agreed that agents and servicers could perform the ACH transactions, it would be inequitable for plaintiffs to avoid arbitration with those same agents and servicers." *Moss*, 2014 WL 2565824, at *6.

The loan agreements Plaintiff signed with the lenders who employed Defendants BMO Harris Bank and First Premier Bank to perform the ACH debit entries do not mention "servicers" or "agents" in the ACH authorization agreement, but they do describe the lenders as "initiat[ing]" the automatic debit entries, suggesting that the debit entries would be completed by a third party. *See* BMO's Mot., Ex. A, at 4; FPB's Mot., Ex. A, at 9. These agreements also contain the most expansive language extending the claims subject to arbitration to those involving "agents . . . or affiliated entities." *See* BMO's Mot., Ex. A, at 5; FPB's Mot., Ex. A, at 11. Accordingly, the Court finds that Plaintiff agreed to arbitrate with an undefined, but

expansive class of entities conducting business with the lenders and thus cannot deny the foreseeability of having to arbitrate her claims against BMO Harris Bank and First Premier Bank.

This is not a case like the cases on which Plaintiff relies where the non-signatory has no relationship with the non-Plaintiff signatory of the underlying agreement or has no role in performing the underlying agreement. As Plaintiff's claims rest heavily on the existence of the underlying loan agreements and Defendants have a close relationship to the lenders' activities, and a textual connection to the arbitration provisions, the Court finds that Plaintiff is equitably estopped from avoiding arbitration of her claims against Defendants. Since the Court finds that the doctrine of estoppel requires this matter to be resolved through arbitration, the Court need not consider Defendants' alternative arguments that the Defendant banks are third-party beneficiaries or agents of the lender and thus entitled to enforce the arbitration agreement.

> B. *Legality of Loan Agreement to be Decided by Arbitrator and Irrelevant to Enforceability of Arbitration Agreement*

Plaintiff also argues that this Court should not enforce the arbitration provisions because the loan agreements are illegal under District of Columbia law prohibiting payday loans. In the same vein, Plaintiff further argues that Defendants, by aiding and abetting these allegedly illegal loans, have "unclean hands" and thus may not benefit from the equitable estoppel doctrine. *See* Pl.'s BMO Opp'n. at 22; Pl.'s MBT Opp'n. at 23; Pl.'s FPB Opp'n. at 20. However, Plaintiff does not argue that the arbitration agreements themselves are illegal or unenforceable. Instead, Plaintiff only makes a legality argument as to the entire loan agreement. But it is well established that the legality of the loan agreement is a question for the arbitrator to decide in the

first instance.[6] As the Supreme Court held in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446 (2006), "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract . . . [U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."[7] Likewise, Plaintiff only makes an unclean-hands argument with respect to the loan agreement as a whole, not the arbitration provision specifically. Such an argument is also for the arbitrator to decide in the first instance. *See Wolff v. Westwood Mgmt. LLC*, 503 F. Supp. 2d 274, 283 (D.D.C. 2007) (rejecting attempt to avoid arbitration based on unclean hands); *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 481-482 (S.D.N.Y. 2013) (rejecting unclean hands argument under rule that challenge to validity of the contract as a whole must go to the arbitrator). Accordingly, the Court finds that Plaintiff's arguments regarding the legality of the loan agreements have no bearing on Defendant's ability to enforce the agreements' arbitration provisions.

---

[6] Plaintiff contends that the rule that the legality of a contract is a question for the arbitrator to decide is limited to arbitration of claims as between signatories. *See* Pl.'s FPB Opp'n. at 7; Pl.'s BMO Opp'n. at 8; Pl.'s MBT Opp'n at 8. However, Plaintiff does not cite any authority to support such a limitation and the Court is not inclined to create one in light of the strong federal policy in favor of arbitration.

[7] Plaintiff argues that Defendants' linking of the ACH authorization to the arbitration provision puts the legality of the arbitration agreement into question because "the payday loans to Plaintiff were [potentially] conditioned on Plaintiff's preauthorization of the ACH debits from her account" in violation of the Electronic Funds Transfer Act. *See* Pl.'s FPB Opp'n. at 8; Pl.'s BMO Opp'n. at 9; Pl.'s MBT Opp'n. at 9. In other words, since the ACH authorization was potentially illegal and Defendants try in their briefs to link the ACH authorization and the arbitration agreement, the legality of the arbitration agreement is questionable and must be decided by the Court. Plaintiffs, however, do not identify any facts or evidence that would suggest the payday loans were conditioned on the ACH preauthorization. Moreover, nothing on the face of the loan agreements suggest that the loans were so conditioned. Accordingly, the Court finds that Plaintiff has not raised a question of fact regarding the legality of the arbitration agreement.

### C. Appropriate to Dismiss Entire Matter

The FAA states that, when a district court deems arbitration is appropriate, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. However, when "all of the plaintiff's claims must be submitted to arbitration" dismissal is appropriate. *Nelson v. Insignia/ESG, Inc.,* 215 F.Supp.2d 143, 158 (D.D.C. 2002); *see also Cole v. Burns Intern. Sec. of Services,* 105 F.3d 1495, 1487 (D.C. Cir. 1997) (District of Columbia Circuit affirmed district court's order dismissing the complaint and compelling arbitration); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) ("[t]he weight of the authority clearly supports dismissals of the case when *all* of the issues raised in the district court must be submitted to arbitration.").

Here, the arbitration provisions contained in the respective loan agreements require the arbitration of "any and all claims, disputes or controversies," including the validity and scope of the arbitration provision and all claims arising out of or relating to the loan agreement. At their base, all of Plaintiff's claims challenge the legality of the loan agreement and thus fall squarely within the arbitration provision. Since there is no further action to be taken by this Court, it is appropriate to dismiss this case in its entirety.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that all of Plaintiff's claims must be submitted to arbitration. Accordingly, the Court hereby GRANTS Defendants' Motions to Compel Arbitration and DISMISSES this case.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge