UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNETTA RILEY<br><br>Plaintiff,<br><br>v.<br><br>BMO HARRIS BANK, N.A., *et al*,<br><br>Defendants. | Civil Action No. 13-1677 (CKK) |

MEMORANDUM OPINION
(July 22, 2015)

Plaintiff, Johnetta Riley, filed suit against Missouri Bank and Trust ("MBT"), BMO Harris Bank, N.A., and First Premier Bank seeking to recover damages and declaratory and injunctive relief on behalf of herself and members of the class of individuals who have been injured by Defendants' alleged "participation in a scheme to access and utilize the Automated Clearing House ("ACH") network to collect unlawful debts in violation of 18 U.S.C. § 1962 and the law of numerous states, including the District of Columbia." Compl. ¶ 1. Defendants each filed a Motion to Compel Arbitration, which the Court granted. *See* Mem. Op. (July 29, 2014), ECF No. [72]. Presently before the Court is Plaintiff's Motion to Reopen Case Against Defendant Missouri Bank and Trust on the basis that the arbitrator named in the loan agreement's arbitration provision is unavailable. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as

---

[1] Plaintiff's Motion to Reopen Case Against Defendant Missouri Bank and Trust ("Pl.'s Mot."), ECF No. [73]; Defendant Missouri Bank and Trust's Memorandum in Opposition to Plaintiff's Motion to Reopen Case ("Def.'s Opp'n"), ECF No. [74]; Plaintiff's Reply to Defendant's Opposition ("Pl.'s Reply"), ECF No. [75]; Plaintiff's Notice Pursuant to the Court's June 15, 2015 Order ("Pl.'s Notice"), ECF No. [77]; Defendant's Notice Pursuant to the Court's Minute Order of June 15, 2015 ("Def.'s Notice"); Plaintiff's Notice of Supplemental Authority ("Pl.'s Supp. Auth."), ECF No. [79].

1

a whole, the Court finds that Plaintiff's Motion does not meet the requirements of Federal Rule of Civil Procedure 60(b). Accordingly, Plaintiff's Motion is DENIED.

## I.   BACKGROUND

The genesis of this case is four online payday loans that Plaintiff applied for and received between September 27, 2012, and May 24, 2013. Compl. ¶¶ 77, 81, 86, 90. Plaintiff alleges that her loans fall within the category of payday loans that are illegal in the District of Columbia. *See id.* ¶ 5. On October 28, 2013, Plaintiff filed suit against the banks that executed the ACH transactions on behalf of the payday lenders. Plaintiff alleges that the banks "enforce[ed] debts they [knew] to be unlawful" by originating "ACH entries that represent payday loan credits and debits to and from consumer checking accounts." *Id.* ¶ 11. The loan agreement that Plaintiff signed with the lender who used MBT to conduct the ACH transactions contained an arbitration provision that stated:

> **ARBITRATION OF ALL DISPUTES**: You and we agree that any and all claims, disputes or controversies between you and us, any claim by either of us against the other (or the employees, officers, directors, agents, servicers or assigns of the other) and any claim arising or relating to your application for this micro-business loan ("Loan"), regarding this Loan or any other Loan you previously or may later obtain from us, this Note, this agreement to arbitrate all disputes, your agreement not to bring, join or participate in class actions, regarding collection of the Loan, alleging fraud or misrepresentation, whether under common law or pursuant to federal, state or local statute, regulation or ordinance, including disputes regarding the matters subject to arbitration, or otherwise, ***shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed***. No class arbitration. All disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. . . .

Pl.'s Mot. at 2-3 (emphasis added).

Defendants filed a Motion to Compel Arbitration pursuant to the arbitration provision in the loan agreements. *See, e.g.,* Def. MBT's Mot. to Compel Arbitration, ECF No. [26]. On July

29, 2014, the Court found that Defendants could enforce the arbitration provision and, accordingly, granted Defendants' motions and dismissed the case in its entirety since "all of the plaintiff's claims must be submitted to arbitration." *See* Mem. Op. (July 29, 2014), at 15.

Nearly three months later, on October 27, 2014, Plaintiff's counsel sent a letter to the National Arbitration Forum ("NAF") attempting to initiate arbitration with Defendant MBT in accordance with the NAF Code of Procedure and the terms of the arbitration agreement. Pl.'s Mot., at 3. On November 5, 2014, Plaintiff's counsel received a reply from NAF explaining that NAF no longer accepts arbitration claims involving consumers, pursuant to a Consent Judgment entered in Hennepin County District Court in July 2009 between the Minnesota Attorney General and NAF. *Id.* at 3-4.

After another approximately three months, Plaintiff filed a Motion to Reopen Case Against Defendant MBT on January 22, 2015. Plaintiff argues that because NAF is unavailable and because its identity as arbitrator was integral to the loan agreement, arbitration is improper and the case against MBT should be reopened for the Court to adjudicate. *See id.* at 4, 12. Defendant filed an Opposition arguing that the Court does not have jurisdiction over Plaintiff's untimely motion and, in the alternative, that the Court should appoint a substitute arbitrator pursuant to Section 5 of the FAA. *See* Def.'s Opp'n, at 1-2. Plaintiff subsequently filed a Reply. On June 15, 2015, the Court ordered the parties to update the Court regarding any changes in, or additions to, the legal authority governing the issues in this case. *See* Minute Order (June 15, 2015). Two days later, the Court amended its June 15, 2015, Minute Order and instructed Defendant to address Plaintiff's argument that the Court has jurisdiction over Plaintiff's Motion pursuant to ancillary jurisdiction since Plaintiff had only raised this argument in her Reply. *See* Minute Order (June 17, 2015). Plaintiff and Defendant each filed the ordered Notice on June 29, 2015. Accordingly, Plaintiff's

Motion is now ripe for review. As the Court finds that Plaintiff's Motion should be considered a Rule 60(b) motion and that the Motion fails to meet any of Rule 60(b)'s grounds for setting aside a judgment, the Court shall deny Plaintiff's Motion on that basis and need not address the parties' arguments as to the underlying merits.

## II.     DISCUSSION

### A. Ancillary Jurisdiction

Plaintiff contends that the Court has ancillary jurisdiction to consider its Motion to Reopen the Case and litigate Plaintiff's claims outside of arbitration since the Court would be exercising its authority to effectuate its July 29, 2014, Order that the parties enter arbitration. *See* Pl.'s Reply, at 1. In Defendant's view, Plaintiff is asking the Court to *reconsider* its prior judgment compelling arbitration and to overturn the order to arbitrate—not to take action to *effectuate* the Court's Order to arbitrate. Def.'s Notice, at 1.

The Supreme Court has explained that ancillary jurisdiction is appropriately asserted: (1) "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," and (2) "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379-380 (1994). Addressing the second prong of *Kokkonen* which provides for jurisdiction to effectuate judgments, the United States Court of Appeals for the District of Columbia Circuit has held that "[*Kokkonen*] teaches that district courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees, but are instead constrained by the terms of the decree and related order." *Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002). Courts in this Circuit have been consistent in narrowly exercising ancillary jurisdiction. *See id.*; *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015); *State of N.Y. v. Microsoft Corp.*, No. 98-1233, 2008

4

WL 254126, *22 (D.D.C. Jan. 29, 2008). In the context of orders compelling arbitration, courts have found it appropriate to exercise ancillary jurisdiction over motions filed during the course of the arbitration proceedings "to determine any subsequent application involving the same agreement to arbitrate." *Owen-Williams v. BB & T Inv. Servs., Inc.*, 717 F. Supp. 2d 1, 13-14 (D.D.C. 2010). Specifically, after compelling the parties to arbitrate their dispute and dismissing the action without prejudice, this Court exercised ancillary jurisdiction over an FAA Section 10 motion to confirm or vacate the arbitration award, *see id.*, and the Fifth Circuit in *Adam Technologies Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 (5th Cir. 2013), exercised ancillary jurisdiction over a plaintiff's motion requesting the appointment of a substitute arbitrator pursuant to Section 5 of the FAA.

Here, Plaintiff is not asking the Court to appoint a new arbitrator as provided by Section 5 or otherwise seeking to "effectuate" or "vindicate" the Court's order to arbitrate under a provision of the FAA.[2] *See* Pl.'s Reply, at 2. Plaintiff is not seeking to assist or facilitate the carrying out of the arbitration. *See Adam Technologies*, 729 F.3d at 450 ("If a party interferes with the carrying out of an order to arbitrate, there is effectuation and vindication inherent in the district court entering relevant new orders."). Instead, Plaintiff moves to have the Court's Order set aside and litigation reinstated—a motion that is more properly evaluated pursuant to Federal Rule of Civil Procedure 60(b). Accordingly, the Court declines to exercise ancillary jurisdiction over Plaintiff's Motion. The Court will consider Plaintiff's Motion as a motion for relief from final judgment under Rule 60(b).

---

[2] Plaintiff's heading discussing ancillary jurisdiction states that her motion to reopen is made "pursuant to Section 5 of the FAA." Pl.'s Reply, at 2. However, Section 5 only provides for the Court to appoint a substitute arbitrator—a request that Plaintiff is not making in her Motion to Reopen. Moreover, Plaintiff herself "encourages the Court" to find "that Section 5 of the FAA is inapplicable." Pl.'s Mot., at 11.

### B. Federal Rule of Civil Procedure 60(b)

Defendant contends that Rule 60(b)(6) offers the only potential basis for Plaintiff to move to set aside the Court's judgment, while Plaintiff argues that relief would be appropriate under either Rule 60(b)(6) or Rule 60(b)(1). The Court shall discuss each ground in turn.

Federal Rule of Civil Procedure 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The Rule "was intended to preserve 'the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of all the facts.' " *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)). As the D.C. Circuit has emphasized, Rule 60(b) "gives the district judge broad latitude to relieve a party from a judgment," *Richardson v. Nat'l R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995), but "should be only sparingly used," *Good Luck Nursing Home*, 636 F.2d at 577. The party seeking relief under Rule 60(b) bears the burden of showing that he or she is entitled to the relief. *Norris v. Salazar*, 277 F.R.D. 22, 25 (D.D.C. 2011). Common to all grounds for relief under Rule 60(b) are the requirements that the motion be timely, *see* Fed. R. Civ. P. 60(c)(1), and that the movant "demonstrate a meritorious claim or defense" to the motion upon which the district court

previously dismissed the complaint, *see Lepkowski v. U.S. Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C. Cir. 1986).

As to the meritorious defense prong, the Court finds that Plaintiff has "provide[d] reason to believe that vacating the judgment will not be an empty exercise or a futile gesture." *Marino v. Drug Enforcement Admin.*, 685 F.3d 1076, 1080 (D.C. Cir. 2012). While the question is one of first impression in this Circuit, Plaintiff has cited to cases from other jurisdictions where courts have held arbitration agreements unenforceable because of the unavailability of the arbitrator designated in the arbitration agreement. *See, e.g.*, *Ranzy v. Tijerina*, 393 F. App'x 174, 175 (5th Cir. 2010). Plaintiff accordingly clears the low bar required to present a meritorious claim. *See Marino*, 685 F.3d at 1080. As the timeliness requirements differ for relief under Rule 60(b)(6) and Rule 60(b)(1), the Court shall discuss them along with the other requirements of each subsection.

   1. *Rule 60(b)(6)*

Rule 60(b)(6) provides, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Supreme Court has consistently held that Rule 60(b)(6) motions should only be granted in "extraordinary circumstances." *Ackerman v. United States*, 340 U.S. 193, 199 (1950); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("our cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."). The D.C. Circuit has "similarly observed that Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.' " *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (quoting *Good Luck Nursing Home*, 636 F.2d at 577).

Plaintiff argues that such an extraordinary circumstance has arisen here because, with NAF's unavailability, she will be left without a forum to have her claims against Defendant heard if the Court refuses to reopen litigation.  Pl.'s Reply, at 6.  The Court does not agree that the denial of the present Motion will foreclose consideration of Plaintiff's claims against MBT.  Plaintiff can file to request that the arbitration take place under a different entity.  Defendant has indicated in its briefing that it "stands willing and ready to arbitrate Plaintiff's claims before a substitute arbitrator applying the NAF Code of Procedure, or before Plaintiff's choice of the American Arbitration Association or JAMS, two well-known national arbitration administrators."  Def.'s Opp'n, at 2.

Moreover, Plaintiff's counsel appears to have been aware of NAF's unavailability to arbitrate consumer agreements at the time Defendants moved to compel arbitration and made a strategic decision not to raise this issue at that time.  In Plaintiff's Reply in support of her present motion, Plaintiff effectively concedes that she was aware of NAF's ban on hearing consumer claims at the time the parties briefed Defendant's Motion to Compel Arbitration when she argues that "raising the issue [of NAF's unavailability] in her opposition to MBT's motion to compel arbitration . . . would have been wholly inconsistent with Plaintiff's position that she never entered into an arbitration agreement with MBT in the first place."[3]  Pl.'s Reply, at 8.  Plaintiff in no way contends that she was unaware of NAF's unavailability at the time the Court was evaluating Defendant's Motion to Compel Arbitration.  Plaintiff does argue that she "could not know for

---

[3] Likewise, in a hearing before Judge Joseph F. Bianco in the Eastern District of New York discussing a similar Motion to Reopen filed in the nearly identical case *Moss v. BMO Harris Bank, N.A. et al.*, Case No. 13-cv-05438-JFB-GRB, Plaintiff's counsel stated, "we certainly could have done that," when asked whether Plaintiff could have raised NAF's unavailability "as an alternative argument" against arbitration at the Motion to Compel Arbitration stage. Pl.'s Notice, Ex. A, Tr. 4:6-14 (May 21, 2015), ECF No. [77-1].

certain whether the NAF would determine that [Plaintiff's] claim fell within the purview of the NAF's consent judgment." *See id.*, at 9. However, as Plaintiff herself makes clear in her briefing, the consent judgment between the Minnesota Attorney General and NAF unquestionably and absolutely barred NAF from hearing all "consumer" complaints,[4] and Plaintiff has consistently described herself and her complaint as a "consumer" complaint before NAF and this Court. Plaintiff's detailed recitation of NAF's clear anti-consumer/pro-creditor history giving rise to the consent judgment belies Plaintiff's argument that she was uncertain that NAF would accept her consumer complaint. *See* Pl.'s Mot., at 12-13. Accordingly, it appears to the Court that Plaintiff made the strategic litigation decision not to inform the Court of NAF's unavailability at the time the Court was considering compelling arbitration and dismissing this action. As stated above, Rule 60(b) "may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.' " *Kramer*, 481 F.3d at 792. Rule 60(b) "is not an opportunity for unsuccessful litigants to take a mulligan." *Id.*; *see also Salazar ex rel. Salazar v. Dist. of Columbia,* 633 F.3d 1110, 1120 (D.C. Cir. 2011) ("Thus, if the movant had an opportunity for appeal and forwent that appeal, subsection (6) of Rule 60(b) has no application." (internal quotations and alterations omitted)).

In any event, "in this Circuit, courts almost uniformly deny Rule 60(b)(6) motions as untimely when they are filed more than three months after judgment." *Carvajal v. Drug Enforcement Admin.*, 286 F.R.D. 23, 26-27 (D.D.C. 2012) (citing cases). Here, Plaintiff's Motion

---

[4] NAF's letter to Plaintiff stated broadly and clearly: "Please be advised that we are no longer able to accept *arbitration claims involving consumers* pursuant to a Consent Judgment entered in Hennepin County District Court in July 2009 between the Minnesota Attorney General and the National Arbitration Forum." Pl.'s Mot, Ex. B (Letter from NAF), ECF No. [73-3] (emphasis added).

was filed approximately six months after judgment was entered. Plaintiff has directed the Court to four cases in this Circuit where the courts entertained a Rule 60(b)(6) motion filed more than three months after final judgment. *See Erick Rios Bridoux v. Eastern Air Lines,* 214 F.2d 207, 209 (D.C. Cir. 1954) (Rule 60(b)(6) motion filed six months after default judgment found timely where defendant filed motion within one month of learning of judgment); *Williams v. Capital Transit Co.,* 215 F.2d 487, 490 (D.C. Cir. 1954) (Rule 60(b)(6) motion filed three years after default judgment found timely where defendant filed motion within three weeks of learning of default judgment); *L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234, 235–36 (D.C. Cir. 1964) (Rule 60(b)(6) motion filed two years after judgment found timely where counsel's "gross neglect" and misleading of plaintiff caused the delay); *Salazar ex rel. Salazar,* 633 F.3d at 1119 (D.C. Cir. 2011) (Rule 60(b)(6) motion filed twenty months after judgment found timely in institutional reform case with substantial post-judgment judicial involvement). However, each of these cases present extraordinary circumstances leading to the delay that are absent from the current case. Here, Plaintiff explains that the three-month delay between the Court's July 29, 2014, Order and submitting the arbitration request to NAF on October 27, 2014, is attributable to the fact that, during that time, "counsel considered filing a notice of appeal," "spent time reviewing the NAF Code," "weighed whether initiating potentially confidential individual arbitrations . . . would vindicate the rights of the Plaintiff and the putative class," and "research[ed] how arbitrators have treated similar claims." *See* Pl.'s Reply, at 7. Plaintiff does not explain the additional two-and-a-half-month delay between receiving NAF's refusal to arbitrate Plaintiff's claims and filing the current Motion to Reopen.

The Court finds the reasons for Plaintiff's delay in filing her Motion far from extraordinary, especially in light of Plaintiff's apparent knowledge of NAF's unavailability at the time the Court

was evaluating Defendant's Motion to Compel Arbitration. If Plaintiff's counsel truly had any potential lingering uncertainty about NAF's availability, such uncertainty would have been a reason for Plaintiff to make a prompt inquiry with NAF. Having lost the case, Plaintiff would be best served by acquiring all relevant information about how to proceed, including the arbitrator's availability. Inquiring as to NAF's availability to hear the claim would assist counsel in deciding whether to file a notice of appeal. Sending an inquiry to NAF immediately would not have impeded counsel's ability to study the NAF code or research how arbitrators have treated similar claims. Moreover, Plaintiff has not offered a reason as to why she waited another two-and-a-half months after receiving the reply from NAF to file the instant motion. "Rule 60(b)(6) relief normally will not be granted unless the moving party is able to show circumstances beyond its control prevented taking earlier, more timely action to protect its interests." *See Carvajal*, 286 F.R.D. at 27 (internal quotation omitted)). Accordingly, the Court finds that Plaintiff has not established the grounds for the Court to grant relief pursuant to Rule 60(b)(6).

    *2. Rule 60(b)(1)*

Plaintiff argues, in the alternative, that her failure to inform the Court of NAF's unavailability is excusable neglect and, accordingly, a basis for relief from the Court's Order to arbitrate under Rule 60(b)(1). The Court disagrees. Rule 60(b)(1) provides, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" because of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Supreme Court has set out four factors for determining when a late filing may constitute "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993). These factors are: "(1) the danger of prejudice to the [opposing party], (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable

control of the movant, and (4) whether the movant acted in good faith." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (citing *Pioneer*, 507 U.S. at 395). The inquiry into whether a party's action constitutes excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

Plaintiff argues that all four *Pioneer* factors weigh in her favor. Pl.'s Reply, at 9. The Court agrees that Defendant has offered no evidence of prejudice that it has suffered because of the delay. *See id.* However, the Court disagrees with Plaintiff's contention that, given counsel's efforts between receiving the Order to compel arbitration and sending the letter to NAF, the delay was "not substantial." *Id.* The Court finds that the six-month delay in bringing NAF's unavailability to the Court's attention after the Court entered judgment was significant in light of the fact that Plaintiff's counsel was apparently aware of NAF's unavailability at the time he filed Plaintiff's opposition to Defendant's Motion to Compel Arbitration on February 18, 2014, or at least had significant doubts as to NAF's availability.

The next "factor – fault – is 'perhaps the most important single factor.'" *Jarvis v. Parker*, 13 F.Supp.3d 74, 78-79 (D.D.C. 2014) (quoting *Institute for Policy Studies v. U.S.C.I.A.*, 246 F.R.D. 380, 383 (D.D.C. 2007)); *see also Wilson v. Prudential Fin.*, 218 F.R.D. 1, 3 (D.D.C. 2003) (describing fault as the "key factor" in excusable neglect analysis). The Court considers the reason for the delay as being squarely within the control of Plaintiff. As discussed above, Plaintiff's counsel was apparently aware that NAF was not available to hear consumer complaints. *See* Pl.'s Reply, at 9. Plaintiff now argues that "the only reason that the parties are in this position is because MBT failed to address [NAF's unavailability] when it . . . requested the Court to compel Plaintiff to arbitration before the NAF." *Id.* at 8. While the Court would have appreciated Defendant bringing the issue to the Court's attention, only Plaintiff had an incentive to raise the argument as

an alternate grounds to avoid arbitration. Accordingly, the Court finds Plaintiff's decision to be the cause of the delay. Ultimately, Plaintiff's decision to not inform the Court of NAF's unavailability and to argue that arbitration was inappropriate was a strategic litigation decision. Where that choice was within Plaintiff's control and caused a significant delay, the Court shall not rescue Plaintiff even if that choice was not taken in bad faith.[5]

The Court emphasizes that although the Court is denying Plaintiff's Motion to Reopen, there is still a course of action for Plaintiff to vindicate her claims against Defendant. Plaintiff may request that arbitration proceed under a different arbitration entity. Such a request to substitute the arbitrator would not be a contested issue as Defendant has indicated that it "stands willing and ready to arbitrate Plaintiff's claims before a substitute arbitrator." *See* Def.'s Opp'n, at 2.

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff is not entitled to relief from the Court's Order compelling arbitration under Federal Rule of Civil Procedure 60(b). Accordingly, Plaintiff's Motion to Reopen Case Against Defendant Missouri Bank and Trust is DENIED.

---

[5] The Court is aware of the Memorandum Opinion and Order recently issued in *Moss v. BMO Harris Bank, N.A. et al.*, Case No. 13-cv-05438-JFB-GRB, on July 16, 2015. The underlying facts in *Moss* are similar to the present case and, as here, the recent opinion addresses the plaintiff's motion to reopen litigation after finding that NAF was unavailable to arbitrate the plaintiff's claims. While the *Moss* court granted the plaintiff's motion to reopen litigation, the Court notes that the *Moss* court was operating in a different procedural posture and controlled by different legal precedent. Unlike in the present case where the action was dismissed after the Court ordered arbitration, the *Moss* court had stayed the litigation after granting the defendant's motion to compel arbitration. Moreover, the *Moss* court was bound by the Second Circuit's precedent in *In re Salomon Shareholders' Derivative Litig.*, 68 F.3d 554 (2d Cir. 1995), which held that Section 5 does not authorize the substitution of an arbitrator when private parties agree to arbitrate exclusively before a specific forum, which subsequently becomes unavailable.

An appropriate Order accompanies this Memorandum Opinion.

                                                      /s/
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge